José Hernández Usera, recurrente, *v.* El Registrador de la Propiedad de San Juan, Sección Primera, recurrido.

Núm.. 1036.—*Sometido:* Noviembre 22, 1938. *Resuelto:* Abril 27, 1939.

*H. Torres Solá,* abogado del recurrente; el registrador recurrido compareció por escrito.

EL JUEZ ASOCIADO SEÑOR WOLF emitió la opinión del tribunal.

José Hernández Usera, de San Juan, solicitó del registrador de esa ciudad la cancelación de ciertas servidumbres militares que habían pesado sobre determinada finca situada en Puerta de Tierra y que aparentemente estaba junto a la antigua ciudad amurallada de San Juan. El registrador se negó a cancelar la mención porque según el registro la misma aparecía como una condición del contrato de compraventa a que se refería la primera inscripción de la propiedad y porque la Ley Núm. 12 de 1923 (Primera Sesión Extraordinaria de 1923, pág. 37) con sus enmiendas no autoriza el que se cancele tal condición. El registrador procedió a tomar la correspondiente anotación preventiva de la solicitud. José Hernández Usera apeló.

En el escrito que se ha presentado ante este tribunal se alega, primero, la descripción de la finca; segundo, que la primera inscripción de la finca núm. 861, que es la que está aquí envuelta, especificaba que dicha finca quedaba sujeta a ciertas servidumbres militares y que al hacerse referencia a los gravámenes se hizo constar lo siguiente:

"Esta finca bajo los antecedentes de descripción y poseedores . . . no se halla afecta a carga alguna."

De los autos se desprende que en 1873 se inscribió una escritura de la propiedad sin hacerse referencia alguna a las servidumbres militares. Sin embargo, subsiguientemente, y bajo el mismo epígrafe, se dice que se inscribe sujeto a las

servidumbres militares a que se refiere la primera inscripción. El recurrente sostiene que las servidumbres militares en cuestión nunca fueron claramente inscritas como cargas. Tercero, que dichas alegadas servidumbres militares constan relacionadas en el registro, por primera vez, en fecha 12 de agosto de 1885, y en varios asientos posteriores se hizo referencia a ellas. Cuarto, que el recurrente, en 28 de septiembre de 1938, otorgó una declaración jurada en una petición dirigida al registro de la propiedad solicitando la cancelación. Quinto, que el registrador de la propiedad denegó la cancelación solicitada.

█ Sexto.—Bajo este párrafo el recurrente suplica que la negativa sea revocada y se ordene la cancelación solicitada, por los siguientes fundamentos:

"Que tales limitaciones no constituyen dentro del tecnicismo del derecho civil que nos rige, un real y verdadero derecho de servidumbre, por cuanto para la existencia de una servidumbre se requiere una finca sirviente y también una dominante, no existiendo en este caso la finca dominante. (Art. 536 del Código Civil.)"

A esto podemos contestar que en los autos que tenemos ante nos la cuestión bajo discusión ha sido mencionada como servidumbre, como condición y como mención. Sea ello como fuere, no hay duda alguna de que hubo una constancia debidamente inscrita en el registro de la propiedad que describe unos derechos militares, ya fueren éstos servidumbres o no. Entonces podríamos preguntarnos si los usos militares del gobierno de España no eran una especie de tenencia dominante sobre algunas de las otras propiedades de la Corona de España o de sus súbditos.

█ "B.—Que el estado de derecho creado por aquellas órdenes gubernamentales, impuestas solamente por el poder militar de aquella época, solamente surtió el efecto de limitar la disposición de la propiedad en cuanto respecta a la altura y construcción en ciertas condiciones de los edificios, de acuerdo con los planes y reglamentos militares, y no engendró derecho alguno a favor del Estado o Gobierno español, como si, por ejemplo se hubiese tratado de la posesión, o de algún otro derecho de naturaleza real."

Parafraseando la jurisprudencia americana, podemos decir que ésta era una condición inherente al terreno (*a condition that ran with the land*), o similar a ella, y hasta cierto punto era un derecho existente a favor de la Corona de España o de su rama militar.

Luego bajo los párrafos "C", "D", "E", "F" y "G" el recurrente continúa argumentando su caso. No podemos convenir con él en que esta supuesta servidumbre, de haberla, era meramente personal por existir aparentemente una restricción por parte del poder soberano sobre los dueños de las fincas que se especificaban.

El recurrente sigue su argumento en la teoría de que si ésta era una cuestión personal, no existía la tradición de ella al poder que sucedió a la Corona de España, o sea a Estados Unidos. Nuevamente da énfasis a esto, sugiriendo que el poder militar anterior había desaparecido completamente por razón del cambio de soberanía; que los Estados Unidos, que a virtud del Tratado de Paz, sucedió en todos los derechos a la Corona de España, no tiene un sistema o arreglo a virtud del cual podía ejercer un poder similar, y algo más en el mismo sentido.

No estamos preparados para decir que no podría concebirse que los poderes militares de los Estados Unidos no pudieran hacer el mismo uso de las alegadas servidumbres que la Corona de España. No importa que los Estados Unidos haya construído en terreno contiguo el correo y otros edificios. La falta de ratificación u otras supuestas inconsistencias, no haría diferencia alguna para los fines de este recurso gubernativo, según veremos muy pronto. No podemos convenir en que el derecho quedó necesariamente extinguido y sugerimos ahora que tal cuestión podría difícilmente ser resuelta en el registro de la propiedad y sí más adecuadamente en un pleito ordinario. Dudamos que podamos convenir fácilmente con el recurrente en que si el derecho se hubiera extinguido, el registrador, de propia iniciativa, podría efectuar en el registro la cancelación deseada.

694

No hemos transcrito todos los argumentos del recurrente por la muy fundamental razón de que estamos de acuerdo con el registrador en que nada hay en la ley de 1923 o sus enmiendas que autorice al registrador a hacer la cancelación, ya fuere *ex proprio vigore* o a instancia de algún dueño. Convenimos con el recurrente en que los estatutos que autorizan cancelaciones deben ser interpretados liberalmente en el sentido de eliminar del registro cualquier asiento que claramente participa de la naturaleza de las cancelaciones mencionadas en la ley de 1923 o sus enmiendas. Sin embargo, estas alegadas servidumbres militares no se asemejan a nada de lo mencionado en la ley de 1923 y en su consecuencia no pueden ser canceladas mediante razonamientos análogos.

Conforme hemos dicho, no podemos estar absolutamente seguros de que las autoridades militares de los Estados Unidos no quieran tal vez impedir que los edificios pasen de cierta altura en determinados sitios. De todos modos, abrigando esta duda, el registrador no es la persona llamada a decidir la cuestión administrativamente, sino que debe acudirse, de existir algún derecho, a una corte de distrito. Podría suceder que fuera necesaria alguna acción legislativa o administrativa por parte de los Estados Unidos.

*Debe confirmarse la nota del registrador.*